**In re PLANKINTON BLDG. CO.**

No. 21189.

District Court, E. D. Wisconsin.

Aug. 25, 1941.

E. H. Hallows and B. F. Saltzstein, both of Milwaukee, Wis., for debtor.

Pellette & Zillmer, of Milwaukee, Wis., for trustee M. H. Grossman.

Dougherty, Arnold & Kivett and Morris Stern, all of Milwaukee, Wis., for J. H. Lawton and another.

Maxwell Herriott (of Lines Spooner & Quarles), of Milwaukee, Wis., for voting trustees of preferred stockholders.

Kenneth P. Grubb and Leroy J. Burlingame (of Quarles, Spence & Quarles), both of Milwaukee, Wis., for Bondholders Protective Committee.

Olwell & Brady, of Milwaukee, Wis., for Plankinton Trust.

Breed, Abbott & Morgan, of New York City (Colby Stilson and Thomas M. Green, both of New York City, of counsel), for William C. Breed and another.

Arthur E. Boroughf and J. Kirk Windle, both of Chicago, Ill., for Securities and Exchange Commission.

Louis R. Potter, of Milwaukee, Wis., for Albert J. Harvey, Sr.

Harvey C. Hartwig, and E. C. Pommerening, both of Milwaukee, Wis., for Albert J. Harvey, Jr., and others.

DUFFY, District Judge.

This is a proceeding for the reorganization of the debtor corporation under Chapter X of the Bankruptcy Act, 11 U.S.C.A. § 501 et seq. The matter for immediate consideration is the determination of the value of the assets of the debtor, as a basis for formulating a plan of reorganization. A wide difference of opinion developed at the hearing, which consumed nine days.

The debtor has a leasehold interest in lands situated on the south side of Wisconsin Avenue—the principal business street of Milwaukee. There is a Wisconsin Avenue frontage of 422 ft., extending from North Plankinton Avenue to North Second Street. The property has a depth of 200 ft., extending to a 20 ft. alley through the center of the block. The leasehold interest was acquired by a 99-year lease dated July 1, 1911. In 1916 the basement and first two stories of the building were constructed. In 1926 the construction of five additional floors was finished, except for some walls, partitions and corridors which were completed later.

This same property was in reorganization under Chapter 77B, 11 U.S.C.A. § 207, and as of July 1, 1936, a plan of reorganization therein was approved by this court. The debtor succeeded to the property in question, and in June, 1940, petitioned this court for reorganization under Chapter X.

The court appointed two appraisers, Mr. Howard J. Tobin and Mr. Walter A. Mewes. Mr. Tobin is the manager of the city loans for the Northwestern Mutual Life Insurance Company. He has had wide experience in the appraisal and valuation of downtown city property. Mr. Mewes is in the contracting business, owns apartment buildings, and for some time past has been a member of the Board of Review for the City of Milwaukee. He is well acquainted with valuations of property in downtown Milwaukee. In the first appraisal filed by Messrs. Tobin and Mewes, the opinion was expressed that a fair value of the property of debter is $1,-

484,470. This appraisal was filed on September 30, 1940. Thereafter an amended appraisal was filed upon the basis of certain information called to the appraisers' attention by the Securities and Exchange Commission. The. appraisers expressed the opinion that a proper valuation would be $1,356,470. However, they were of the opinion that repayments of the Grant Company loan should be handled in a certain manner, and on this basis of arriving at net income, determined their final valuation at $1,216,014. The court having reached the conclusion as to the proper treatment of the repayments under the Grant loan, I shall take it that the final opinion of the court appraisers is that the valuation of debtor's assets is $1,356,407.

The Securities and Exchange Commission made an exhaustive and careful study of the property and the past record of the debtor. The extent of this study is shown by the fact that some eight months were consumed by some members of the staff. It was the opinion of the Securities and Exchange Commission, as a result of their investigation, that the valuation of debtor's assets was somewhere between $1,028,712 and $1,346,730. The difference in the figures is accounted for by the difference in rate of capitalization which is used, as well as different estimates as to the remaining economic life of the building. All of the foregoing figures were subject to deduction in the amount that might be immediately necessary for a rehabilitation of the property. There was a sharp conflict of opinion as to the amount that should be expended at this time.

The owners of the Class A common stock presented the appraisal report of the American Appraisal Company, which fixed a valuation of $4,000,000. The Fidelity Appraisal Company reached the same conclusion.

Much testimony was received as to the proper valuation of the land; whether the lease itself had any value to the debtor; whether the first floor and basement spaces should bring in a higher rental than now being received; whether the second floor space, unoccupied ever since the West Arcade was closed, could be made to produce income; and various other matters. pertaining to the possible future income and expense of the property.

The court has kept in mind the latest expression of the Supreme Court as to the proper basis of valuation in reorganization proceedings. Consolidated Rock Products Co. et al. v. Du Bois, 312 U.S. 510, 61 S.Ct. 675, 685, 85 L.Ed. 982. In that case the court said:

"In the second place, there is the question of the method of valuation. From this record it is apparent that little, if any, effort was made to value the whole enterprise by a capitalization of prospective earnings. The necessity for such an inquiry is emphasized by the poor earnings record of this enterprise in the past. Findings as to the earning capacity of an enterprise are essential to a determination of the feasibility as well as the fairness of a plan of reorganization. * * *

" * * * Such criterion is the appropriate one here, since we are dealing with the issue of solvency arising in connection with reorganization plans involving productive properties. It is plain that valuations for other purposes are not relevant to or helpful in a determination of that issue, except as they may indirectly bear on earning capacity. * * * The criterion of earning capacity is the essential one if the enterprise is to be freed from the heavy hand of past errors, miscalculations or disaster, and if the allocation of securities among the various claimants is to be fair and equitable. * * * Since its application requires a prediction as to what will occur in the future, an estimate, as distinguished from mathematical certitude, is all that can be made. But that estimate must be based on an informed judgment which embraces all facts relevant to future earning capacity and hence to present worth, including, of course, the nature and condition of the properties, the past earnings record, and all circumstances which indicate whether or not that record is a reliable criterion of future performance. * * * The extent and method of inquiry necessary for a valuation based on earning capacity are necessarily dependent on the facts of each case."

The evidence does justify some small increase of the estimate of the earning capacity of the property over the amount determined by the Securities and Exchange Commission. I am also convinced that a considerable number of the items in the rehabilitation program, which were suggested at the hearing, are not necessary or advisable at this time. Taking all these matters into consideration, I have reached

the conclusion that a proper valuation of the assets of the debtor is $1,550,000.

 It has been suggested that the procedure here followed, in finding the value of debtor's assets in advance of and separate from a consideration of a plan of reorganization, is unusual. However, I believe it is a logical procedure to follow, and such procedure is not prohibited by the terms of the act. The valuation of the assets of a debtor in reorganization must, of course, be fixed with the idea in mind that a determination of solvency or insolvency must be made. Secondly, the fixing of the valuation at this time is important because it will determine what classes of claimants or interested parties may be allowed to participate in the reorganized enterprise; and such valuation will also disclose what class or classes may be available for the purposes of supplying the additional capital necessary to carry out a successful or feasible plan of reorganization. Furthermore, a valuation of the debtor's assets is preliminary to a determination of the fairness and feasibility of a plan of reorganization.